```
            UNITED STATES DISTRICT COURT
               DISTRICT OF MINNESOTA
              Civil No. 18-462(DSD/SER)
```

Agustin Zacarias Matacua,

       Petitioner,

v.                                                          **ORDER**

Brian Frank, Sherburne County Jail
Administrator; Joel Brott, Sherburne
County Sheriff; Peter Berg, Field
Office Director, ICE; Kirstjen Nielsen,
Secretary of the Department of
Homeland Security (DHS);
Jefferson B. Sessions, U.S. Attorney General;
U.S. Department of Homeland Security,

       Respondents.

    Michael D. Reif, Esq., and Robins Kaplan LLP, 800 LaSalle
    Avenue, Suite 2800, Minneapolis, MN 55402 and Benjamin Casper
    Sanchez, Esq., University of Minnesota Law School, Federal
    Immigration Litigation Clinic, 190 Mondale Hall, 229 19th
    Avenue South, Minneapolis, MN 55455, counsel for petitioner.

    Ann Bildsten, United States Attorney's Office, 300 South 4th
    Street, Suite 600, Minneapolis, MN 55415, counsel for
    respondents.

This matter is before the court upon the motion for a preliminary injunction by petitioner Agustin Zacarias Matacua. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted.

## BACKGROUND

Zacarias is a citizen of Mexico who entered the United States without inspection on May 15, 2007. Am. Pet. ¶ 1. Since that time, he has lived continuously in the United States. Id. Zacarias presently lives in Willmar, Minnesota with his long-term

partner, Delma Caballero Sanchez, and their two daughters.[1] Id. Zacarias is the family's primary provider and has maintained the same job for nearly ten years. Id. ¶ 20.

On March 11, 2017, Zacarias was charged with driving while intoxicated in Kandiyohi County.[2] Id. ¶ 21. He pleaded guilty to that offense, a gross misdemeanor, on May 1, 2017. Id. The court sentenced him to 364 days in jail, 334 of which were stayed for two years, and two years of supervised probation. Id.; Am. Pet. Ex. B. The terms of his probation include abstention from alcohol, daily call-ins, random drug and alcohol testing, educational programming, and 30 days of electronic alcohol monitoring. Am. Pet. ¶ 21; id. Ex. B. Immigration and Customs Enforcement (ICE) took Zacarias into custody immediately after his release from Kandiyohi County on May 11, 2017, and the Department of Homeland Security (DHS) commenced removal proceedings. Am. Pet. ¶ 22.

After DHS determined that he was ineligible for bond pending removal proceedings, Zacarias requested a bond redetermination hearing before the immigration court. Id. Ex. L. On June 19, 2017, Immigration Judge (IJ) Kristin W. Olmanson held a bond hearing following which the parties submitted additional briefing

---

[1] Sanchez has a young daughter from a previous relationship and Zacarias and Sanchez have a daughter together. Id. ¶ 19. Zacarias is a father to both girls. Id. Sanchez also has two adult children who live with them. Id.

[2] Zacarias has two previous infractions for driving without a license, but no prior criminal convictions. Id. ¶ 24.

2

and evidence.  Id. Ex. A, at 1.  On June 29, 2017, IJ Olmanson issued a written decision granting Zacarias bond in the amount of $5,000.  Id. at 3.  IJ Olmanson held that Zacarias had met his burden of establishing that he was neither a danger to the community nor a flight risk.  Id. at 2.  She reasoned that, although drunk driving is a dangerous crime that represents a threat to public safety, Zacarias's conviction was an "aberration" and that "he is not a danger to the community."  Id. at 3.  She specifically noted that Zacarias had no previous criminal convictions or arrests, had been law abiding since his arrest, and was in compliance with the conditions of his probation.  Id.  She also concluded that he was not a flight risk given his ties to the community, longstanding employment, and his appearance at criminal proceedings in Kandiyohi County.  Id.

On July 11, Zacarias posted bond and returned to his family and his job.  Am. Pet. ¶ 25.  In August, DHS appealed the IJ's decision to the Board of Immigration Appeals (BIA) arguing that the decision was "inconsistent with her acknowledgment of the danger that drunk driving poses" and thus constituted clear error.  Id. Ex. C, at 4.  On January 4, 2018, the BIA issued a one-page order vacating the IJ's decision.  Id. Ex. E.  The BIA concluded that Zacarias failed to meet his burden of establishing that he is not a danger to the community, noting the danger of drunk driving and the fact that Zacarias's blood alcohol was twice the legal limit.

3

Id. Zacarias filed a petition for writ of habeas corpus with this court on February 16 seeking to prevent his detention. Am. Pet. ¶ 28. A few days later, ICE took Zacarias back into custody. Id. ¶ 29.

Zacarias then moved for a bond redetermination hearing arguing that his circumstances had changed since the first bond hearing with IJ Olmanson. Id. Ex. L ¶¶ 9, 10. Specifically, Zacarias argued that IJ Olmanson's predictive findings that he did not pose a threat to the community or a flight risk were substantiated by his nearly eight months of lawful behavior and compliance with the terms of probation. Id. IJ Ryan R. Wood denied the motion finding that the "passage of time and [Zacarias's] compliance with probation terms is not enough to mitigate the seriousness and recent nature of the offense." Id. Ex. M, at 3. Zacarias appealed IJ Wood's determination to the BIA, which has yet to reach a decision. Am. Pet. ¶ 32. A merits hearing in the underlying removal proceeding is set for May 2, 2018.

In the petition before this court, Zacarias argues that the BIA violated the constitution and applicable statutes and regulations by (1) failing to apply the proper standard of review in its assessment of IJ Olmanson's decision; (2) instituting a per se finding of dangerousness for DWI offenses; and (3) improperly shifting the burden of proof from DHS to the detainee. Zacarias now moves for a preliminary injunction enjoining DHS from detaining

him while he awaits final determination of his removal proceeding.[3]

**DISCUSSION**

**I.  Subject Matter Jurisdiction**

Before turning to the merits of the Zacarias's motion, the court must first decide whether it has jurisdiction over this matter.  See Mohamed v. Sessions, No. 17-5331, 2017 WL 6021293, at *1 (D. Minn. Dec. 5, 2017) ("[I]f a court determines it lacks jurisdiction over the matter, it need not analyze the Dataphase factors.").  The government argues that 8 U.S.C. § 1226(e) strips the court of jurisdiction to review the underlying bond determination because it was a discretionary decision made by the BIA.[4]  Zacarias acknowledges that § 1226(e) prohibits review of

---

[3]  Respondents are Brian Frank, Sherburne County Jail Administrator; Joel Brott, Shreburne County Sheriff; Peter Berg, Field Office Director, ICE; Kirstjen Nielsen, Secretary of the Department of Homeland Security; and Jefferson B. Sessions, Attorney General of the United States.  The court will refer to them collectively as the government.

[4]  Section 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

There is a similar jurisdictional bar set relating to judicial review of removal orders in 8 U.S.C. § 1252(a)(2)(B) and (b)(9).  Cases addressing § 1252 are therefore instructive to the issue presented.

5

discretionary custody decisions, but argues that he is not precluded from raising constitutional or legal challenges to the BIA's decision.

The court agrees and finds that because the petition raises legal challenges to the BIA's determination, most compellingly by arguing that the BIA applied the incorrect standard of review in assessing IJ Olmanson's factual findings, it has subject matter jurisdiction to consider the petition and the instant motion. See Waldron v. Holder, 688 F.3d 354, 360 (8th Cir. 2012) (holding that the jurisdictional bar did not preclude a petition for review based on "the legal question of whether the BIA applied the correct standard of review when reviewing the IJ's factual findings"); Ramirez-Peyro v. Gonzales, 477 F.3d 637, 640 (8th Cir. 2007) (same).

**II.  Motion for Preliminary Injunction**

A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).  The court considers four factors in determining whether a preliminary injunction should issue:  (1) the likelihood of the movant's ultimate success on the merits, (2) the threat of irreparable harm to the movant in the absence of relief, (3) the balance between the harm alleged and the harm that the relief may cause the non-moving party, and (4) the public interest.  Dataphase Sys., Inc. v. C.L.

6

Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). No single factor is determinative. Id. at 113. Instead, the court considers the particular circumstances of each case, remembering that the primary question is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Id.

### A. Likelihood of Success on the Merits

The court first considers the "most significant" Dataphase factor: the likelihood that the movant will prevail on the merits. S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).

The court will focus on Zacarias's claim that the BIA failed to apply the clear error standard in its review of IJ Olmanson's decision.[5] The parties agree that the BIA was bound to review the IJ's decision for clear error, but disagree as to whether it did so. Under the clear error standard, "[t]he IJ's findings of fact 'may not be overturned simply because the Board would have weighed the evidence differently or decided the facts differently had it

---

[5] Zacarias also claims that the BIA (1) determined that DWI offenses are effectively subject to mandatory detention even though such offenses are not articulated in § 1226(c) and (2) improperly shifted the burden of proof in such cases to the detainee. The merits of these arguments are less clear and will not be addressed in this order. See United Health Care Ins. Co. v. AdvancePCS, 316 F.3d 737, 742-43 (8th Cir. 2002) (holding that a movant need only demonstrate that it is likely to succeed on one claim in order to establish a likelihood of success on the merits).

7

been the factfinder.'" Waldron, 688 F.3d at 360 (quoting In re R-S-H, 23 I. & N. Dec. 629, 637 (BIA 2003)). Yet that is precisely what the BIA appears to have done here. After stating the correct standard of review, the BIA failed to actually conclude that IJ Olmanson committed clear error by finding that Zacarias was neither a risk to the community nor likely to flee. "[I]t needed to explain why those determinations were clearly erroneous based on the evidence presented ...." Id. at 361. Instead, the BIA appears to have completely disregarded the IJ's findings and supplanted them with its own. See Am. Pet. Ex. E ("[W]e disagree with the Immigration Judge's holding that he has established that he is not a danger to the community."). The Eighth Circuit has reversed BIA decisions for this very reason. See Waldron, 688 F.3d at 360-61; Ramirez-Peyro, 477 F.3d at 641-42. On the strength of those similar cases, the court concludes that Zacarias has met his burden to establish likelihood of success on the merits.

**B.    Irreparable Harm**

To establish irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir. 1996). "A mere possibility of irreparable harm is not enough" to issue an injunction. Superior Edge, Inc. v. Monsanto Co., 964 F. Supp. 2d 1017, 1046 (D. Minn. 2013). "Irreparable harm occurs when a party has no adequate

8

remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009).

Here, there is no serious dispute that Zacarias has already suffered irreparable harm and will continue to do so if he is not granted relief. Not only has he already suffered a loss of liberty - which is perhaps the best example of irreparable harm - his detention has prejudiced and will continue to prejudice his ability to comply with the terms of his probation and further establish his rehabilitation, all to the detriment of the pending removal proceedings.

### C. Balance of Harms

Under this factor, "a court should flexibly weigh the case's particular circumstances to determine whether ... justice requires the court to intervene ...." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998) (citation and internal quotation marks omitted). The government contends, restating its jurisdictional argument, that the balance of harms weighs in its favor because the immigration system will be harmed if the court allows collateral attacks on its operational decisions. As already discussed, the court has jurisdiction to entertain this matter and it will not find inherent harm in exercising that jurisdiction. On the other hand, and as discussed above, the harm to Zacarias is substantial.

**D.   Public Interest**

The final <u>Dataphase</u> factor requires the court to consider the public interest.  The government argues that the public has an interest in allowing it to make discretionary decisions.  Although the court agrees generally with that statement, it has already determined that it has jurisdiction to hear this matter.  Zacarias argues that it is in the public interest to protect constitutional and legal rights.  The court agrees and finds that this factor also weighs in favor of granting the preliminary injunction.

As a result, based upon a balancing of the four <u>Dataphase</u> factors, the court determines that a preliminary injunction is warranted.  In such circumstances, the general rule is that the matter should be "remand[e]d to the agency for additional investigation or explanation."  <u>Fl. Power & Light Co. v. Lorion</u>, 470 U.S. 729, 744 (1985); <u>see also</u> <u>Ramirez-Peyro</u>, 477 F.3d at 641 (same).  Courts may, however, decline to remand matters to an agency, particularly where doing so would result in "a never ending loop from which aggrieved parties would never receive justice." <u>Hawkes Co., Inc. v. U.S. Army Corps of Eng'rs</u>, No. 13-107, 2017 WL 359170, at *11 (D. Minn. Jan. 24, 2017) (citation omitted).

Here, remanding the matter for proper determination by the BIA would effectively be futile.  Time is of the essence given that the final removal hearing is set for May 2nd, just weeks from now.  The court is not persuaded that the BIA will timely review the matter

10

given that it took nearly eight months to issue its first order. Under these circumstances, the court finds that the appropriate remedy is to enjoin respondents from detaining Zacarias pending completion of his removal proceedings.[6]

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion for a preliminary injunction [ECF No. 13] is granted;

2. Respondents and all of their respective officers, agents, servants, employees, attorneys, and persons acting in concert or participation with them are immediately enjoined and restrained from detaining petitioner while he awaits final determination of his removal proceedings;

3. This order shall remain in full force and effect for the duration of petitioner's immigration proceedings or until such time as this court decides his amended petition for writ of habeas corpus, whichever comes first; and

---

[6] The court does not believe that Zacarias's pending appeal of IJ Wood's bond redetermination decision affects its analysis because IJ Wood simply followed the BIA's decision reversing IJ Olmanson's grant of bond.

4.   No bond shall be required, and this order shall be effective immediately.

Dated: April 18, 2019

s/David S. Doty
David S. Doty, Judge
United States District Court
